# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

_____

| | |
|---|---|
| DANIEL J. KENNEALLY, ROBERTA L. KENNEALLY, SCOTT R. JOHNSON, and LORI K. JOHNSON,<br><br>Plaintiffs,<br><br>vs.<br><br>JONATHAN B. CLARK, VIGDIS J. CLARK, JENNIFER LEE CLARK, JACK OSBORNE CLARK, JONATHAN EARLING CLARK, JEFFREY B. CLARK, and THE ESTATE OF JILL ELIZABETH CLARK,<br><br>Defendants. | CV 10-67-BU-RFC-JCL<br><br>ORDER |

_____

Defendants Jonathan and Vigdis Clark ("Clarks") move to disqualify Plaintiffs' counsel based on an alleged conflict of interest arising out of the fact that Plaintiffs' counsel formerly represented the Clarks in what the Clarks assert

was substantially related litigation.[1] For the reasons detailed below, the Clarks' motion is denied.

## I. Background

The Clarks are embroiled in a property dispute with neighboring landowners, Plaintiffs Daniel and Roberta Kenneally and Scott and Lori Johnson ("Plaintiffs"). The facts giving rise to the dispute date back to 1978, when the Clarks purchased a 21 acre parcel of land in Butte, Montana from Martin and Rose Lisac ("the Lisacs"). The Clarks divided their newly acquired 21 acre parcel into seven smaller tracts pursuant to a family transfer exemption under the Montana Subdivision and Platting Act and, in August 2010, transferred one tract to each of their five children. The Clarks also transferred one tract to Vigdis in her name only, and retained ownership of the final tract in both their names.

Plaintiffs own property that adjoins the Clarks' 21 acre parcel to the west. Another entity tangentially related to this litigation – Our Lady of the Rockies, Inc. – owns property adjoining the 21 acre parcel to the east. To the southwest, the 21 acre parcel is abutted by a parcel of property originally belonging to the Clarks, but

---

[1] Although the motion to disqualify has been filed on behalf of all of the above-named Defendants, the Clarks are the only ones that claim to have previously had an attorney-client relationship with Plaintiffs' counsel. The Court will thus refer to the Clarks as the moving Defendants, and will tailor the following discussion accordingly.

now owned by Lisle and Pauline Woods ("the Woods").

The Clarks claim they have a right-of-way easement across Plaintiffs' land to the west for the purpose of accessing their own property. This alleged easement is particularly significant because the Clarks have entered into an agreement to sell the seven individual tracts comprising the 21 acre parcel to third-party Ray Ueland. If the sale is consummated, Ueland apparently intends to assign the purported easement rights across Plaintiffs' property to Our Lady of the Rockies and other landowners to the east.

Plaintiffs commenced this declaratory judgment action in an effort to prevent this from happening. Plaintiffs seek a declaratory judgment establishing that the Clarks do not have an easement across their property. The Clarks counterclaim that Plaintiffs have improperly filed a lis pendens affecting their property and are tortiously interfering with the pending sale to Ueland. Additionally, the Clarks seek a declaration that they do indeed have an easement across the Plaintiffs' property based on documents of record or, in the alternative, based on the doctrines of easement by prescription, necessity, implication, or reservation.

Plaintiffs have retained attorneys from the Worden Thane and Christian Samson & Jones law firms to represent them in this case. The two Worden Thane attorneys involved are Peter Dayton and Matthew Cuffe. It is undisputed that

Dayton and another Worden Thane attorney, Shane Vanatta, represented the Clarks in prior litigation denominated *Our Lady of the Rockies v. Peterson et al.,* 181 P.3d 631, ¶9 (Mont. 2008). In that litigation, Our Lady of the Rockies unsuccessfully sought to establish a public access easement across the southeastern portion of the Clarks' 21 acre property and the adjoining properties of several neighboring landowners, including the Woods. Had Our Lady of the Rockies prevailed, the easement would have provided for public access across the Woods and Clark properties, to its own property immediately to the east.[2]

The Clarks have moved to disqualify Dayton, Cuffe, and the Worden Thane firm pursuant to Rule 1.9 of the Montana Rules of Professional Conduct, alleging that counsel have a conflict of interest based on the fact that they formerly represented the Clarks in the *Our Lady of the Rockies* litigation.

## II. Discussion

The Court possesses the inherent authority to regulate the conduct of attorneys appearing before it. *In re Snyder*, 472 U.S. 634, 645 n.6 (1985); *Paul E. Iacono Structural Engineer v. Humphrey,* 722 F.2d 435, 438-39 (9th Cir. 1983). To that end, Local Rule 83.13 establishes the standards of professional conduct for

---

[2] Plaintiffs' response brief contains a map depicting the various properties and alleged easements involved in this case and the *Our Lady of the Rockies* litigation. Dkt. 28, at 2.

attorneys practicing in this Court – standards that incorporate both the American Bar Association's Model Rules of Professional Conduct and the Montana Rules of Professional Conduct.

The prohibition against an attorney representing a new client against a former client is set forth in Rule 1.9(a) -- both the Montana Rule and the ABA Rule reading as follows:

> (a)  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

By its terms, Rule 1.9 requires that three criteria be satisfied as a prerequisite to disqualification.  First, there must have been a past attorney-client relationship between the party seeking disqualification and the attorney whose disqualification is sought. Rule 1.9(a); *Pro-Hand Services Trust v. Monthei*, 49 P.3d 56, 59 (Mont. 2002).  Second, the interests of the current and former clients must be "materially adverse."  Rule 1.9(a).  Third, the current and former matters must be the same or "substantially related."  Rule 1.9(a); *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980).

Here, the first two criteria are clearly satisfied.  There is no dispute that Dayton and the Worden Thane firm represented the Clarks in the *Our Lady of the*

*Rockies* litigation. Nor is there any dispute that the Clarks' interests are materially adverse to those of the Plaintiffs. The critical question, then, is whether the pending litigation and the prior *Our Lady of the Rockies* litigation are "substantially related."

The Ninth Circuit has explained Rule 1.9(a)'s "substantially related" standard for disqualification as follows: "If there is a reasonable probability that confidences were disclosed [in an earlier representation] which could be used against the client in [a] later, adverse representation, a substantial relation between the two cases is presumed." *Trone*, 621 F.2d at 998. Because "[b]oth the fact and the appearance of total professional commitment are endangered by adverse representation in related cases," it does not matter "whether confidences were in fact imparted to the lawyer by the client." *Trone*, 621 F.2d at 998-99. In other words, "[i]t is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Trone*, 621 F.2d at 999.

In a later case applying these *Trone* principles, the Ninth Circuit explained that in order to determine whether two matters are "sufficiently related, [the court] must decide whether 'there is a reasonable probability" that the confidences [the court] presume[s] were disclosed during [the former representation] would be useful to" the opposing party in the current litigation. *In re County of Los Angeles*,

223 F.3d 990, 994 (9th Cir. 2000). In making this determination, the Court's inquiry is "restricted to the scope of the representation engaged in by the attorney." *Trone*, 621 F.2d at 999. This inquiry "calls for a careful comparison between the factual circumstances and legal theories of the two cases." *In re County of Los Angeles*, 223 F.3d 990, 994 (9th Cir. 2000). "Substantiality is present if the factual contexts of the two representations are similar or related." *Trone*, 621 F.2d at 998.

While the Ninth Circuit has thus provided ample guidance on what is meant by the "substantially related" standard of Rule 1.9, issues of attorney disqualification like the one at hand are governed by state law. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). This means that the Court "must follow the reasoned view of the [Montana Supreme Court] when it has spoken on the issue." *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). The Montana Supreme Court has not yet had occasion to interpret Rule 1.9(a)'s "substantially related" standard. It has, however, twice cited various portions of the Ninth Circuit's *Trone* decision with apparent approval. *Pro-Hand Services Trust v. Monthei*, 49 P.3d 56, 59 (Mont. 2002); *In re Guardianship of Mowrer*, 979 P.2d 156, 159 (Mont. 1999). This Court is thus confident that the Montana Supreme Court would follow *Trone* and adopt the Ninth Circuit's construction of the "substantially related" standard set forth in Rule 1.9(a).

Although the Montana Supreme Court has not specifically defined this "substantially related" standard, it has addressed the proof required of a party seeking attorney disqualification based on an alleged conflict of interest. *Schuff v. A.T. Klemens & Son*, 16 P.3d 1002 (Mont. 2000). According to *Schuff,* "the gravamen of a motion to disqualify is not that an attorney or firm violated one of the conflict of interest rules," such as Rule 1.9; "rather, a motion to disqualify must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court." *Schuff*, 16 P.3d at 1011.

When the *Schuff* Court articulated this standard, it did so retrospectively. The defendant in *Schuff* was appealing an adverse final judgment and argued, among other things, that the trial court had erred by denying its motion to disqualify plaintiffs' counsel based on a concurrent conflict of interest. *Schuff*, 16 P.3d at 1014. From that retrospective perspective, the *Schuff* Court determined that reversal was not warranted absent some showing by the defendant that it had been prejudiced, or that its rights had been adversely impacted by the continuing representation. *Schuff*, 16 P.3d at 1014-15.

Unlike the defendant in *Schuff*, the Clarks have timely moved for disqualification under Rule 1.9(a) based on an alleged conflict of interest early in

the pending litigation. Nevertheless, as the party seeking disqualification it falls upon the Clarks even at this early juncture to "offer sufficient proof that the continued representation" will likely prejudice or adversely impact their rights as this litigation progresses. *Schuff*, 16 P.3d at 1011. This burden is consistent with *Trone*'s "substantial relationship" standard, which requires that the party seeking disqualification show there "is a reasonable probability that confidences were disclosed which could be used against the [party] in the later, adverse representation." *Trone*, 621 F.2d at 998.

The Clarks have not met that burden here. Although the Clarks maintain that "the parties, the land, [and] the legal dispute"[3] in both cases are the same, a careful comparison between the factual circumstances and legal theories of the two cases shows otherwise. In *Our Lady of the Rockies,* for example, the Clarks were defending against efforts by Our Lady of the Rockies to burden their estate by establishing a public right of way easement across the southeastern portion of their property. In this case, however, it is the Clarks who seek to establish a private access easement across neighboring property for the benefit of their own estate. And unlike the easement alleged in *Our Lady of the Rockies,* which would have traversed the southeastern portion of the Clarks' property, the easement alleged

---

[3] Dkt. 30, at 2.

here is in an entirely different location and would traverse Plaintiffs' land, which lies to the west of the Clarks' property.

The two cases are also distinct because the easement alleged in *Our Lady of the Rockies* called upon counsel to construe a very different set of historical documents, including 19th century mining patents and survey documents. Those documents have nothing to do with the parties' respective claims in this case. As the pleadings reflect, the property dispute at issue here will instead require that counsel evaluate more recent property records, including the 1995 plat of the Christiaens Minor Subdivision where Plaintiffs' property is located, and a 1990 document recorded by Plaintiffs' predecessors that purportedly grants the Clarks an easement. Dkt. 2 & 3.

Contrary to the stance taken by the Clarks, this case is thus distinguishable from *Our Lady of the Rockies* litigation in all material respects. This case arises from a dispute between the Clarks and a different party, over a different easement across different land, involving different legal issues. As these differences illustrate, the factual context and scope of counsel's representation in *Our Lady of the Rockies* was substantively different from the context and scope of their representation here. Because the two cases are so distinguishable, there is no reasonable probability that any of the confidences the Court presumes the Clarks

disclosed to counsel during the *Our Lady of the Rockies* litigation could be used against them in this litigation.

In an effort to show otherwise, the Clarks point to the fact that they had "originally contemplated providing Our Lady of the Rockies access across the very easement in dispute in this case." Dkt. 26-2, at 2. At the recent evidentiary hearing, Jonathan Clark testified that he had independently negotiated with Our Lady of the Rockies to provide the entity with access across the Plaintiffs' property by way of the easement at issue here. The Clarks would have in turn allowed Our Lady of the Rockies to access its own property to the east by traversing their 21 acre parcel. Those negotiations fell through, however, and Our Lady of the Rockies ultimately filed suit against the Clarks in an effort to provide for public access to its property by way of an entirely different route.

By Jonathan Clark's own testimony, any discussions he had with Our Lady of the Rockies regarding access across Plaintiffs' property took place before the *Our Lady of the Rockies* litigation began, and before any involvement by Worden Thane or its attorneys. There is nothing in the record to suggest that the easement the Clarks now claim to have across Plaintiffs' property played any part whatsoever in the *Our Lady of the Rockies* litigation or otherwise fell within the scope of counsel's representation in that matter. In fact, Jonathan Clark testified to the

contrary, agreeing on cross examination that he never discussed that alleged easement with his counsel and never asked for legal advice on the question of whether or not he and his wife had access across Plaintiffs' property. This testimony simply confirms what the record otherwise shows, which is that the *Our Lady of the Rockies* litigation had nothing to do with the easement alleged in this case.

The Clarks also maintain that the two matters are substantially related because the road at issue in *Our Lady of the Rockies* may be implicated as a potential alternative to their alleged easement over Plaintiffs' property. In this regard, the Clarks allege as one of many theories in support of their counterclaim that they have an easement by necessity across Plaintiffs' property.[4] Dkt. 2, at 5. In defense to that counterclaim, Plaintiffs specifically assert that the "Defendants are not entitled to an easement by necessity across Plaintiffs' property because there was no strict necessity when [the Lisacs] sold the Defendants' property to [the Clarks] in 1978, because the Lisacs had legal access to the Defendants' property via a prescriptive easement along the road up Reese Canyon, which was the historical access route to the Defendants' property." Dkt. 20, at 4. That

---

[4] The Clarks' Answer and Counterclaim identifies their claim of easement by necessity as an alternative defense. But the Court views the claim, by its nature, to be a counterclaim.

historical access route was the same road over which Our Lady of the Rockies sought to establish an easement in the prior litigation.

Fully apprised of the Plaintiffs' specific defense to their claim of easement by necessity, the Clarks respond with the general conclusory statement that "[t]he success of Dayton and his law firm in the prior case have a profound effect on the fight in this case because there may not be effectively usable alternative access to the Clark land as a result." Dkt. 27, at 5. Importantly, the Clarks have not disputed either in briefing or at hearing, that they have a historical right of private access to their property. Nor have they specifically explained how their access over that road may be placed in dispute in this litigation.

The Court is thus satisfied that the scope and factual context of the two representations are entirely different. The Clarks have not presented any plausible argument as to how any confidences they presumably shared with their former counsel could potentially be used against them in this litigation. The Montana Supreme Court has cautioned that litigants "must not be lightly separated from [their] counsel of choice." *In re Guardianship of Mowrer*, 979 P.2d 156, at 160 (Mont. 1999). Because the Clarks have not shown that there is a reasonable probability that the confidences they presumably disclosed to their former counsel could now be used to their disadvantage, the Clarks have not met their burden of

proving that allowing Plaintiffs' counsel to remain on the case will likely prejudice or adversely impact their rights as this litigation progress.

## III. CONCLUSION

Based on the foregoing,

IT IS ORDERED that the Clarks' Motion to Disqualify Counsel and Law Firm is DENIED.

DATED this 1st day of June, 2011.

                                              /s/ Jeremiah C. Lynch  
                                              Jeremiah C. Lynch  
                                              United States Magistrate Judge